<b>United States District Court</b><br>For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELENA R. CASSADY, | No. C 07-5405 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNION ADJUSTMENT CO., INC., *et al.*, | |
| Defendants. | |

Defendant Union Adjustment Company, Inc. has filed a motion for summary judgment. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the October 31, 2008 hearing.

**BACKGROUND**

This lawsuit arises out of an underlying debt collection action brought in state court, *Union Adjustment Company, Inc. v. Cassady*, (Santa Clara County Sup. Ct. Case No. 1-07-CV-079999). In the collection action, Union Adjustment sued to collect the balance owed by Ms. Cassady after a minivan she purchased was repossessed for nonpayment and resold at an auction.

In January 2002, plaintiff purchased the 1993 Dodge Grand Caravan minivan from a dealership called Cash for Cars, Inc. Complaint ¶ 12; Def's Ex. 6 at Ex. D (sale contract). Pursuant to the terms of the Retail Installment Sale contract, the principal amount financed was $8,803.44, at an interest rate of 21.20%. Def's Ex. 6 ¶ 7, Ex. D. The purchase was financed through A-L Financial Corporation. In 2003, plaintiff stopped making payments on the minivan, and the vehicle was repossessed and resold

at an auction on October 2, 2003, for $250.00. Def's Ex. 6 ¶ 13.[1] The parties agree that at the time of the sale, the Kelly Blue Book value of a 1993 Dodge Grand Caravan was $1,625.00. Def's Ex. 6, Ex. F. Plaintiff asserts that the $250 sale price was not reasonable in light of the Blue Book value. Cassady Decl. ¶ 12. Although defendant does not explicitly argue that the sale price was reasonable, defendant has submitted the declaration of Jeanette Concha of A-L Financial, which states:

> A Vehicle Condition Report prepared by "Advanced Recovery," list[ed] the overall condition of the van as "POOR" and cit[ed] to numerous and extensive damage to the vehicle, including extensive paint damage and scratches, a cracked windshield, and a damaged fender.

Def's Ex. 6 & Ex. D (Vehicle Condition Report). The parties also dispute whether a notice of intent to sell the vehicle was sent to plaintiff prior to the auction, as required by California law.

Prior to the repossession, plaintiff had made payments totaling $3,919.54. *Id*. ¶ 8, Ex. C. After deductions for costs associated with the repossession, $73.50 was credited to plaintiff's account and paid to A-L Financial. Def's Ex. 6 at ¶ 13. During this time, plaintiff was living at 5157 Norma Way, #236, in Livermore, California. Def's Ex. 8 (Cassady Depo. at 16:18-23, 19:20-20:15).

On or about November 4, 2003, A-L Financial assigned to defendant Union Adjustment the right to collect the deficiency owed by plaintiff, $4,966.00. Rubinfeld Decl. ¶¶ 2,3, Def's Ex. 2.[2] Also on

---

[1] The record is somewhat disputed on the facts regarding the repossession and resale. Plaintiff states that the minivan stopped working, and she contacted A-L Financial and requested that the company waive one to two months payments due to her financial situation, but that A-L Financial refused to help her. Cassady Decl. ¶ 7. Plaintiff states that in late August 2003, she asked A-L Financial to pick up the van in a specified parking lot in Livermore, California, and that A-L Financial agreed and represented that "nothing would happen" to her. *Id*. ¶¶ 8-9. Plaintiff testified at her deposition that "Jose" from A-L Financial told her that "since I voluntarily had it repossessed, that he would fix it and he would send me a letter that I would have to sign saying that I voluntarily had them come and get it because it was no longer working, it was broken down. I never got that letter." Def's Ex. 8 at 37:15-21. Records submitted by defendant state that the vehicle was reported as abandoned by the Livermore Police Department. Def's Ex. 6 ¶ 9 & Ex. D.

[2] In the underlying collection action, Union attempted to use the declaration of Jeanette Concha of A-L Financial. Def's Ex. 6. As described *infra*, the state court did not permit Union to use that declaration after an objection by plaintiff. Plaintiff has not objected in this action to defendant's submission of the Concha declaration. Ms. Concha's declaration states that A-L Financial assigned the debt on December 6, 2006. Concha Decl. ¶ 6. Attached to the Concha declaration at Exhibit A is a document titled "Assignment of Account for Legal Action," and dated December 1, 2006. That document states that "[s]ince we have exhausted all efforts to get the above referenced account to pay amicably, we believe filing suit at this time could bring this matter to resolution." *Id*. Ex. A. Thus, although Ms. Concha states that A-L Financial assigned the debt to Union on December 6, 2006, it appears from all of the documents submitted that A-L Financial first assigned the debt to Union in 2003,

November 4, 2003, Union mailed a document titled "Collection Notice – Important" to plaintiff at the Norma Way address. Rubinfeld Decl. ¶ 5, Def's Ex. 3. The letter included a "Reference: A L FINANCIAL", stated the amount due plus interest was $5,053.08, and stated:

> THE ABOVE CLAIM HAS BEEN ASSIGNED TO THIS OFFICE FOR COLLECTION. IF YOU AGREE YOU OWE THE BALANCE SET FORTH ABOVE, PLEASE REMIT THE TOTAL IN THE ENVELOPE PROVIDED.
>
> UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THAT THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.
>  . . .
>
> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
>
> The state Rosenthal Fair Debt Collection Practice Act and the federal Fair Debt Collection Practices Act require that except under unusual circumstances, collectors may not contact you before 8 a.m or after 9 p.m. They may not harass you by using threats of violence of arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov . . . .

*Id*. Defendant has submitted a declaration stating that the letter was not returned as undeliverable, and Union had no notice that it was not received by plaintiff. Rubinfeld Decl. ¶ 6.

According to plaintiff, on November 1, 2003, plaintiff left California and moved to Flagstaff, Arizona. Def's Ex. 8 (Cassady Depo. at 16:24-17:5). Plaintiff does not recall whether she left a forwarding address with the Post Office, or whether she received any forwarded mail while in Arizona. *Id*. at 17:6-22, 22:11-17. Plaintiff states that she never received the November 4, 2003 notice. Cassady Decl. ¶ 15.

Union also sent plaintiff a letter dated November 27, 2006, titled "NOTIFICATION PER CCP

---

and then in 2006 assigned the debt for purposes of legal action.

3

SECTION 1033 (2)." Rubinfeld Decl.¶ 7, Def's Ex. 4. That letter stated, *inter alia*, "UNION ADJUSTMENT CO., INC., A CALIFORNIA CORPORATION, INTENDS TO COMMENCE LEGAL ACTION AGAINST YOU." *Id*. Plaintiff states that she never received the November 27, 2006 letter. Def's Ex. 8 (Cassady Depo. at 36:10-14, 37:24-38:11).

Plaintiff returned to California in February 2005. *Id*. at 16:5-13. Plaintiff testified during her deposition that two or three times during the fall of 2006, a "Renee" from Union Adjustment called her workplace asking for plaintiff. *Id*. at 34-36. Plaintiff testified that she never took or returned the calls because she believed that they were from a labor union. *Id*. at 36-37. The instant lawsuit is not based on any of these phone calls.

Union Adjustment retained defendant Zee Law Group to prosecute the collection action against plaintiff. On January 15, 2007, attorney Tappan Zee sent plaintiff a demand letter. That letter stated, *inter alia*,

> As you are undoubtedly aware from prior correspondences, this office has been retained by Union Adjustment Co. Inc. to collect the debt owed by you in the above referenced matter. Union Adjustment Co. Inc. is the Assignee of Interest to the original account you previously held with Cash for Cars, Inc., account number . . . .

Def's Ex. 5. The letter also informed plaintiff that "this law firm has recommended to our client, Union Adjustment Co. Inc., that suit shall be filed against you which could result in a judgment against you" and "Unless you make payment in-full within ten (10) days from the date of this letter, you will be served with legal process and litigation will commence against you without further notice." *Id*. The caption of the letter included a reference to "Court Case No.: ‹Pending›." *Id*. According to plaintiff, this was the first letter she received from either defendant regarding the collection of the debt. Cassady Decl.¶¶ 15, 18. Plaintiff testified at her deposition that based on the reference to "Court Case No.: ‹Pending›", she believed that she had already been sued. Def's Ex. 8 (Cassady Depo. at 43-45).

On February 14, 2007, Union Adjustment filed the collection action against plaintiff in state court, seeking the deficiency balance of $4,966.00, interest at 21.20%, and attorneys fees and costs. Cassady Decl. Ex. A. The collection action proceeded to trial on September 24, 2007. Def's Ex. 7 (trial transcript). At the beginning of the trial, Union's attorney offered a sworn declaration from Jeanette Concha of A-L Financial in lieu of Ms. Concha's live testimony. *Id*. After plaintiff's counsel objected

4

on hearsay grounds, the judge did not admit the declaration. *Id*. The court found that "the plaintiff is unable to proceed in an appropriate manner by the presentation of competent evidence, and the Court therefore will find for the defendant in this manner." *Id*. at 8:23-27.

On October 23, 2997, plaintiff filed this lawsuit against defendants Union Adjustment and the Zee Law Group alleging violations of the Federal Debt Collection Practices Act and the California Rosenthal Act. On October 3, 2008, plaintiff and defendant Zee Law Group filed a notice of settlement.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

In opposing defendant's motion for summary judgment, plaintiff contends that Union Adjustment violated the FDCPA and the Rosenthal Act[3] in the following ways: (1) Union Adjustment's November 27, 2006 letter did not contain the proper notices for an "initial communication" with a debtor; (2) Union Adjustment falsely claimed it had the right to collect the debt; (3) Union Adjustment attempted to collect interest it was prohibited from collecting; and (4) the January 15, 2007 letter from the Zee Law Group did not contain the proper notices and made false and misleading statements. Defendant Union Adjustment moves for summary judgment on plaintiff's claims, contending that Union Adjustment's actions complied with federal and state law. Alternatively, Union Adjustment contends that plaintiff's claims are barred by the California litigation privilege and the *Noerr-Pennington* doctrine. Finally, Union Adjustment contends that plaintiff cannot establish the elements necessary to recover emotional distress damages.

**I.     November 27, 2006 letter; November 4, 2003 letter**

Plaintiff argues that defendant's November 27, 2006 letter did not contain the notices required by the FDCPA and the Rosenthal Act for the "initial communication" to the debtor. 15 U.S.C. § 1692g(a). However, Union Adjustment has submitted undisputed evidence that on November 4, 2003, it sent plaintiff a collection notice informing her of the assignment of the claim, as well as plaintiff's rights under California and federal law. Rubinfeld Decl. ¶ 3, Def's Ex. 3. That letter was mailed via first class mail to plaintiff's Norma Way address. The letter was not returned as undeliverable, and Union Adjustment had no notice that it was not received by plaintiff. Rubinfeld Decl. ¶ 6.

Plaintiff's opposition does not address the November 4, 2003 letter in any way. Instead, plaintiff simply asserts that defendant's November 27, 2006 letter, which she characterizes as defendant's initial communication with her, did not comply with the law. However, under *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197 (9th Cir. 1999), "section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor." *Id*. at 1201. Thus, it is irrelevant whether plaintiff actually received the November 4, 2003 letter. Similarly, because

---

[3] The Rosenthal Act incorporates the FDCPA. *See* Cal. Civ. Code § 1788.17. Plaintiff's opposition does not distinguish between her claims under the two statutes.

6

1 defendant's November 27, 2006 letter was not the initial communication with plaintiff, that letter did
2 not need to contain the notices specified by Section 1692(g).  Accordingly, to the extent that plaintiff's
3 claims are based on her allegation that defendant's "initial communication" violated federal and state
4 law, the Court GRANTS defendant's motion for summary judgment.

## II. Defendant's right to collect the debt, including interest

Plaintiff contends that Union Adjustment falsely claimed that it had the right to collect the debt from plaintiff.  Plaintiff first argues that the state court determined that Union did not have the right to collect the debt from plaintiff when the court entered judgment in favor of plaintiff, and that Union is now barred from relitigating this issue under the doctrine of collateral estoppel.  However, the state court did not find that Union did not have the right to collect the debt from plaintiff.  Instead, the state court found that Union was not prepared to proceed to trial on the trial date, and entered judgment in favor of plaintiff on that ground.  *Cf. Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) (noting that fact that collection action is unsuccessful does not, by itself, establish violation of FDCPA).[4]

Plaintiff also contends that Union violated the law by falsely representing the character or legal status of a debt.  Plaintiff argues that in order to collect the debt from plaintiff, Union was required to show that the auction of the minivan was commercially reasonable, and that A-L Financial provided notice to plaintiff of its intention to dispose of the minivan.  *See generally Atlas Thrift Co. v. Horan*, 27 Cal. App. 3d 999, 1009 (1972) ("[T]he right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice."); *see also* Cal. Civ. Code § 2983.8(b) (no deficiency judgment unless court determines, based on affidavit or a hearing, that sale of vehicle complied with, *inter alia*, Cal. Com. Code § 9610); Cal. Com. Code § 9610 (sale must be commercially reasonable); Cal. Civ. Code § 2983.2(a) (notice).

Union does not address these issues in its papers.  While the Vehicle Condition Report attached

---

[4] To the extent plaintiff suggests that Union did not have an assignment from A-L Financial, plaintiff has not submitted any evidence disputing Union's proof of that assignment.  *See* Rubinfeld Decl. ¶ 2, Def's Ex. 2 & 3.  Plaintiff is also incorrect that Union did not have the right to seek interest, since the contract between A-L Financial and plaintiff provided for 21.2% interest, and "[a]n assignment carries with it all rights of the assignor."  *Foreman Roofing, Inc. v. United Union of Roofers, Waterproofers & Allied Workers*, 144 Cal. App. 3d 99, 107 (1983).

7

to the Concha declaration suggests that the condition of the minivan was poor, defendant has not submitted an affidavit or any other evidence establishing the reasonableness of the auction price. Since plaintiff has asserted that the sale was not commercially reasonable, and defendant has not submitted any evidence on this point, the Court cannot conclude on this record that the price was commercially reasonable.

With regard to notice, plaintiff argues that Union is required to establish proof of the mailing of a notice of intention to dispose of motor vehicle with a certified return receipt from the Post Office, citing California Civil Code Section 2983.2. That section provides that such notice "shall be personally served *or* shall be sent by certified mail, return receipt requested, *or* first-class mail, postage prepaid, directed to the last known address of the persons liable on the contract." Cal. Civ. Code § 2983.2 (emphasis added). Here, Ms. Concha states in her declaration that on September 4, 2003, a notice of intent to sell the motor vehicle at issue was sent to plaintiff. Def's Ex. 6 ¶ 10. The "Notice of Intention to Dispose of Motor Vehicle" is attached as Exhibit E to the Concha Declaration, as is a copy of the certified mail receipt. However, as plaintiff notes, the certified mail receipt does not have a postmark. Thus, on this record, the Court cannot conclude that defendant has met its burden of showing compliance with the notice requirement of Section 2983.2. Accordingly, the Court DENIES defendant's motion for summary judgment to the extent plaintiff's claims are based on the allegation that defendant falsely represented the character or legal status of the debt.

### III.    January 15, 2007 letter from Zee Law Group

Plaintiff contends that the January 15, 2007 letter from Zee Law Group did not contain the notices required by federal and state law for the initial communication. Plaintiff also argues that the letter contained false and misleading statements, such as including the statement "Court Case No.: ‹Pending›", which misleadingly implied that litigation had already been commenced, as well as misleadingly stating that "As you are undoubtedly aware from prior correspondences, this office has been retained by Union Adjustment . . . ." since there was no prior correspondence informing plaintiff that Zee Law Group had been retained by Union Adjustment.

Defendant argues that the Zee Law Group's letter complied with the law, but also that there is

8

no basis to hold Union Adjustment vicariously liable for the January 15, 2007 letter. Although the Ninth Circuit has recognized vicarious liability under the FDCPA, *see Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994), "there is no legal authority for the proposition that an attorney is generally liable for the actions of his client." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1173 (9th Cir. 2006). "Under general principles of agency – which form the basis of vicarious liability under the FDCPA – to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'" *Id.* (citations omitted.

Here, plaintiff has offered no evidence upon which a reasonable trier of fact could conclude that Union exercised control over the Zee Law Group. In contrast, defendant has submitted the declaration of Debbie Rubinfeld, Union's Vice President and Legal Manager. Ms. Rubinfeld states, "[o]nce a file is turned over by Union to its attorney, Union relies upon the attorney's judgment and discretion as to how to handle the legal collection, including how to proceed with pre-litigation demands and/or when and whether to proceed with litigation." Rubinfeld Decl. ¶ 7. Accordingly, the Court GRANTS defendant's motion for summary judgment to the extent plaintiff's claims against Union Adjustment are based on the January 15, 2007 letter.

### IV. *Noerr-Pennington* doctrine and California litigation privilege

Defendant contends that plaintiff's claims are barred by the *Noerr-Pennington* doctrine and the California litigation privilege. The Court is unpersuaded that the *Noerr-Pennington* doctrine bars actions under the FDCPA. Defendant has not cited any authority within the Ninth Circuit applying this doctrine to FDCPA claims. Instead, the Court agrees with the reasoning of *Sial v. Unifund CCR Partners*, 2008 WL 4079281, *3-5 (S.D. Cal. Aug. 28, 2008), in which the court held that the doctrine did not bar an FDCPA claim. The *Sial* court relied on the Supreme Court's decision in *Heinz v. Jenkins*, 514 U.S. 291 (1995), which held that litigating attorneys were "debt collectors" under the FDCPA. Although *Heinz* did not directly address this question, the holding of *Heinz* strongly suggests that the *Noerr-Pennington* doctrine does not apply to FDCPA actions.

With regard to the California litigation privilege, the Court reaches a different conclusion based upon the facts of this case. The Court notes that the Rosenthal Act explicitly excludes attorneys from

the definition of "debt collectors." *See* Cal. Civ. Code § 1788.2(c). The Court also notes that there is no California authority on the interplay between the Rosenthal Act and the California litigation privilege, and federal district courts are split on this issue. However, courts addressing the question have made findings based upon the specific alleged violations in each case, and have drawn distinctions between harassing conduct and communications occurring prior to the debt collection action, and those occurring within judicial proceedings. *See generally Lopez Reyes v. Kenosian & Miele, LLP*, 525 F. Supp. 2d 1158, 1163-64 (N.D. Cal. 2007) (discussing cases).

Here, the only claim to survive summary judgment is plaintiff's claim under federal and state law that Union sought to collect a debt that plaintiff was not legally obligated to pay. As in *Lopez Reyes*, the "only allegedly wrongful debt collection practices in the present case occurred entirely in the context of the filing of a state court complaint to recover a debt." *Id*. at 1164. The Court finds that the application of the litigation privilege to the communication at issue would not render the Rosenthal Act meaningless, and holds that plaintiff's remaining claim, as brought under the Rosenthal Act, is barred.

### VI.   **Emotional distress damages**

Defendant contends that plaintiff does not have any factual basis for claiming emotional distress damages as a result of Union's actions. The parties also disagree on whether a plaintiff must meet the standard for intentional infliction of emotional distress in order to recover emotional distress damages under the FDCPA.

The Court finds that whether plaintiff has suffered emotional distress as a result of Union's actions is a factual question that is inappropriate for summary judgment. In the event this case proceeds to trial, the Court will resolve the question of the appropriate legal standard governing plaintiff's claim for emotional distress damages.

///

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part defendants' motion for summary judgment. (Docket No. 31).

**IT IS SO ORDERED.**

Dated: October 27, 2008

SUSAN ILLSTON
United States District Judge